## OKLAHOMA GAS & ELECTRIC CO. et al. v. STREIT et al.

No. 24332.   Opinion Filed June 13, 1933.

S. N. Bunch, for petitioners.

Paul L. Arnold, for respondents.

BAYLESS, J.   F. E. Streit was employed as a lineman by the Oklahoma Gas & Electric Company, and on the 21st of September, 1929, sustained an accidental injury arising out of and in the course of his employment. The employee was injured by being struck on the head by a small hand pulley dropped from the top of a telephone pole. His foreman took him to a nearby town to seek medical assistance, but was unable to find a doctor. They then returned to the scene of work, and there the employee was treated by his coworkers, and he attempted to continue in the performance of his duties. About three days later, he quit and went to his home, where the symptoms of which he now complains began to manifest themselves, and he sought and obtained some medical attention from his family physician. On November 11, 1929, the employer filed with the State Industrial Commission is a first notice of injury, on November 13th the employee filed his first notice of injury and claim for compensation, and, on November 23rd the attending physician filed his report. On December 10, 1929, the employer filed an answer in the matter, admitting the accident and the wage scale of $7 per day, but denied that any disability was sustained as a result of the accident. The matter was set for hearing at Guthrie, Okla., January 16, 1930, but the employee did not appear at the hearing. The record does not show that order was made in the matter at that time. On September 9, 1932, the employee filed a motion for hearing, claiming to have considerable permanent disability as a result of the injury and asking that it be determined.

There were three separate hearings of this matter, and depositions were also taken. There can be no question about the

occurrence of the accident or of the rate of pay. The employee claimed to have been affected by the injury as follows: * * * A loss of hearing, nervousness, headaches, and loss of strength in the left arm, the left leg, and the left side of the body. The Commission entered an award for a loss of hearing and found that the employee's wage-earning capacity had been lessened in the amount of $2 per day, and awarded compensation at the rate of $8 per week for a period not to exceed 300 weeks. The employer and its insurance carrier appeal and make three assignments of error:

"1. There is no competent testimony to sustain the finding of the State Industrial Commission.

"2. The State Industrial Commission erred in its finding that the claimant's earning capacity has been reduced.

"3. The State Industrial Commission erred as a matter of law."

And divide the argument into two points, to wit: (1) As to the evidence of the resulting disability, and (2) as to the evidence of the loss of wage-earning ability.

The employer and insurance carrier contended that the evidence introduced at these hearings as to the cause of the employee's present disability is not sufficient to support the finding of the Commission that it was caused by the injury. In this respect we can only say that at the various hearings had, the testimony of six physicians, all of whom were admitted to be qualified, was taken, and the testimony of two of these physicians, Doctors C. C. Shaw and J. O. Butler, unqualifiedly supports the contention of the injured employee and the finding of the State Industrial Commission that the employee's disability resulted from the accidental injury before referred to. Under the oft-repeated rule of this court, we cannot and will not weigh the conflicting evidence brought about by these conflicting opinions of the physicians for the purpose of determining the weight thereof.

The next contention presents a most serious problem. Subdivision 3 of section 13356, O. S. 1931, in part provides:

"Other cases: In this class of disabilities the compensation shall be sixty-six and two-thirds per centum of the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment or otherwise payable during the continuance of such partial disability, not to exceed three hundred weeks, but subject to reconsideration of the degree of such impairment by the Commission on its own motion or upon the application of any party in interest."

This section recognizes that an employee may receive an injury to his person which might not affect any of the particular members of the body for the loss of which compensation is enumerated, yet the result of which would be to disable the injured employee just as much if not more than injuries to some of the members specifically enumerated. This section recognizes that the most reasonable result from such an injury would be to lessen the injured employee's wage-earning capacity, and the lessened earning ability is set up as the basis upon which the award is to be based. If the injured employee, within the contemplation of this subdivision, does not suffer a diminution of wage-earning capacity, there is no compensation due to him for the injury after the healing period. If, on the other hand, within the "other cases" provision, it is found after the healing period that the injury has affected him to the extent that he cannot earn in the same employment or otherwise as much as he did prior to the injury, his compensation is to be based upon the diminution of the earning capacity as applied to a certain percentage of his average weekly wage. There is no dispute about the average wage of the employee before the injury, for it is agreed it was $7 per day. There is no dispute in this record but that the employee has not worked as much since the injury as he did before, which he attributes to his physical condition. He says, however, that he accepted every job offered him in the period between the injury and healing. It is, however, apparent from the record that he has at numerous times since his injury worked for the employer above named and other parties, doing the same work, and it does not appear in the record anywhere that he received less wages when he was doing such work because of his physical condition than he did prior to the injury. It appears that some of the foremen for whom he worked, and possibly the men with whom he worked, recognized his condition and made his work lighter when possible, but it is shown that they refrained from making this condition known to the particular employer. The only evidence in this record as to the difference in wage scale after the injury, as compared to that before the injury, is the testimony of the superintendent of the city light and water plant of the city of Crescent, Okla. His

testimony shows that the injured employee worked for him after the injury and sometimes received the same, sometimes a greater, and finally an average daily wage less than that received at the time of the injury. However, this witness stated positively that the lower wage was entirely due to economic conditions and not to the lessened ability of the claimant to work.

The claimant filed his motion for hearing on the 9th day of September, 1932, and the order was made November 18, 1932, and awarded compensation beginning with the date of the filing of the motion and thereafter not to exceed 300 weeks, subject to its continuing jurisdiction. This is not the rule applied in the cases of Magnolia Petroleum Co. v. Allred, 160 Okla. 126, 16 P. (2d) 78, and Industrial Track Const. Co. v. Colthrop, 162 Okla. 274, 19 P. (2d) 1084.

For all of these reasons, the award of the Commission is vacated, and the cause is remanded to the Commission, with directions to take evidence upon the date of the commencement of the period of permanent partial disability, and the loss of earning capacity, if the same can be shown.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, BUSBY, and WELCH, JJ., concur. OSBORN, J., absent.