## OKLAHOMA GAS & ELECTRIC CO. et al. v. STREIT et al.

No. 24971.   March 6, 1934.

S. N. Bunch, for petitioners.

Paul L. Arnold, for respondents.

CULLISON, V. C. J. This is an original action in this court to review an order and award of the State Industrial Commission rendered and entered of record on the 4th day of August, 1933. This is the second time this case has been before this court, the petitioners having requested and obtained a review of an order and award of the Commission rendered in favor of the claimant on November 18, 1932 (164 Okla. 110, 23 P. (2d) 214).

The claimant, F. E. Streit, was employed as a lineman by the Oklahoma Gas & Electric Company, and on the 21st day of September, 1929, sustained an accidental injury arising out of and in the course of his employment. The claimant was injured by being struck on the head by a small hand pulley dropped from the top of a telephone pole.

On November 13, 1929, claimant filed his first notice of injury, and on November 23rd the attending physician filed his report. On December 10, 1929, the employer filed an answer in the matter, admitting the accident and the wage scale of $7 per day, but denied that any disability was sustained as a result of the accident. On September 9, 1932, the claimant filed a motion for hearing, claiming to have considerable permanent disability as a result of the injury, and asking that it be determined.

The Commission entered an award for a loss of hearing, and found that the claimant's wage-earning capacity had been lessened in the amount of $2 per day, and awarded compensation at the rate of $8 per week for a period not to exceed 300 weeks. The employer and its insurance carrier appealed to this court and assigned three errors.

The employer and insurance carrier contend that the evidence introduced at these hearings as to the cause of the employee's present disability is not sufficient to support the finding of the Commission that it was caused by the injury.

On the 18th day of November, 1932, this court rendered the following judgment:

"The award of the Commission is vacated and the cause is remanded to the Commission with directions to take evidence upon the date of the commencement of the period of permanent partial disability, and the loss of earning capacity, if the same can be shown."

It will be observed the cause was remanded to the Commission for the purpose of taking "evidence upon the date of the commencement of the period of permanent partial disability and the loss of earning capacity."

On August 4, 1933, the Commission rendered a second order and award in this cause, which, omitting the formal parts, is as follows, to wit:

"It is therefore ordered: That within 15 days from this date the respondent or insurance carrier pay to the claimant the sum of $100 for said serious and permanent disfigurement, and pay the claimant the sum of $1,568, being compensation from October 28, 1929, to August 4, 1933, at the rate of $8 per week, and to continue to pay the claimant the sum of $8 per week for a period not exceeding 300 weeks from and after October 28, 1929, on account of the permanent partial disability and decrease in wage-earning capacity by reason of the accidental injury aforesaid, subject, however, to a reopening at any time on a change of condition by any interested party therein.

"It is further ordered: That $200 is a fair and reasonable attorney fee to be paid to Paul Arnold out of the accumulated amount now due. * * *"

Petitioners appeal from the above and foregoing award to this court, and allege six errors. As we view the case all errors specified may be considered together. There is but one question before this court for judicial determination, namely:

"Was the evidence adduced at the second hearing sufficient to warrant the Commission finding that 'the claimant by reason of said accidental personal injury has sustained a permanent partial disability by reason of which his wage-earning capacity has been reduced from $7 per day to $5 per day, or a difference of $2 per day? * * *' "

June 13, 1933, this court, speaking through Justice Bayless (164 Okla. 110, 23 P. (2d) 214), said (syllabus pars. 1, 2, 3):

"1. In order to sustain an award of the State Industrial Commission, based on subdivision 3 of section 13356, O. S. 1931, designated as 'other cases,' it is necessary that the record contain competent evidence reasonably tending to support the finding of the Commission 'that claimant suffered a loss of his wage-earning capacity as a result of the injury.'

"2. Section 13356, O. S. 1931, provides for compensation during the continuance of permanent partial disability 'not to exceed 300 weeks.' That period commences with the permanent partial disability and not with the award therefor.

"3. Record examined; held, the finding of the Commission that claimant suffered a loss of earning capacity is not reasonably supported by the evidence."

July 6, 1933, the Industrial Commission, in compliance with the judgment of this court, set the case for hearing. July 19, 1933, a hearing was had as directed by this court. August 4, 1933, the Commission made the following order and award:

"The Commission is therefore of the opinion: Upon a consideration of the foregoing facts that the claimant is entitled to compensation in the sum of $100 for said permanent and lasting disfigurement above described, and claimant is further entitled to compensation at the rate of $8 per week from October 28, 1929, the date on which he returned to work, to August 4, 1933, or for 196 weeks or the sum of $1,568, and to continue compensation thereafter at the rate of $8 per week for a period not to exceed 300 weeks from and after October 28, 1929, on account of the permanent disability, and reduced wage-earning capacity, subject, however, to a reopening at any time on a change of condition by any of the interested parties herein.

"It is therefore ordered: That within 15 days from this date the respondent or insurance carrier pay to the claimant the sum of $100 for said serious and permanent disfigurement, and pay the claimant the sum of $1,568, being compensation from October 28, 1929, to August 4, 1933, at the rate of $8 per week, and to continue to pay the claimant the sum of $8 per week for a period of not to exceed 300 weeks from and after October 28, 1929, on account of the permanent partial disability and decrease in wage-earning capacity by reason of the accidental injury aforesaid, subject, however, to a reopening at any time on a change of condition by any interested party herein.

"It is further ordered: That $200 is a fair and reasonable attorney fee to be paid to Paul Arnold out of the accumulated amount now due. * * *"

August 28, 1933, petitioners filed their appeal bond, and the case is now here for adjudication. Petitioners in their brief of October 10, 1933, assign three specifications of error, as follows:

"(1) There is no competent evidence to support the finding of the Commission that the claimant has sustained a decrease in earning capacity due to his injury.

"(2) The conclusion of law and the order of the Commission are not supported by its findings, or by any competent evidence.

"(3) The order and award of the Commission is contrary to law and is not within the jurisdiction of the Commission."

The three propositions will be considered together.

The only questions before the Commission after the case was remanded were:

"(1) To take evidence upon the date of the commencement of the period of permanent partial disability; and (2) the loss of earning capacity, if any can be shown."

The above questions were presented to this court in the first hearing and are again presented for adjudication. This court held in its former opinion, concurred in by every member of the court present, that:

"(1) In order to sustain an award of the State Industrial Commission, based on subdivision 3 of section 13356, O. S. 1931, designated as 'other cases,' it is necessary that the record contain competent evidence reasonably tending to support the finding of the Commission 'that claimant suffered a loss of his wage-earning capacity as a result of the injury.'

"(2) Section 13356, O. S. 1931, provides for compensation during the continuance of permanent partial disability 'not to exceed 300 weeks.' That period commences with the permanent partial disability and not with the award therefor.

"(3) Record examined: held, the findings of the Commission that claimant suffered a loss of earning capacity is not reasonably supported by the evidence."

This court held in Magnolia Petroleum Co. v. Allred, 160 Okla. 126, 16 P. (2d) 78:

"Section 13356, O. S. 1931, provides for compensation during the continuance of permanent partial disability 'not to exceed 300 weeks.' That period commences with the permanent partial disability and not with the award therefor."

After a careful reading of the evidence in the case, we find no additional evidence in the last hearing before the Commission even tending to prove "the date of the commencement of the period of permanent partial disability." The testimony adduced at the last hearing is, in fact, the same or similar evidence as in the first hearing before the Commission, which evidence this court held to be insufficient to prove "when the period of permanent partial disability began."

Having found that the Commission failed to establish "the date of the commencement of the period of permanent partial disability," as directed so to do by this court, we proceed to discuss proposition No. 2, namely, "The loss of earning capacity, if any can be shown."

The claimant filed his motion for hearing on the 9th day of September, 1932. The Commission made its order and award of compensation beginning September 9, 1932, subject to its continuing jurisdiction. This is not the rule applied by this court in determining loss of earning capacity. Magnolia Petroleum Co. v. Allred, 160 Okla. 126, 16 P. (2d) 78; Industrial Track Constr. Co. v. Colthrop, 162 Okla. 274, 19 P. (2d) 1084.

The loss of earning capacity is determined, by a proper interpretation of subdivision 3, section 13356, O. S. 1931, designated "other cases." In the Magnolia Case, supra, this court held:

"Compensation for permanent partial disability falls within the third subdivision of section 7290, C. O. S. 1921, as amended by ch. 61, sec. 6, S. L. 1923, and, where such permanent partial disability is not one of those specifically mentioned, it falls within the classification of 'other cases,' and is calculated upon the basis of 66⅔ per cent. of the difference between the previous average weekly wage and the subsequent wage-earning capacity, and continues during such permanent partial disability, but not to exceed 300 weeks."

The court is again requested to review the entire record in the case, to determine whether or not the evidence adduced is sufficient to sustain the finding of the Commission that:

"The claimant by reason of said accidental personal injury has sustained a permanent partial disability by reason of which his earning capacity has been reduced from $7 per day to $5 per day or a difference of $2 per day."

Whether or not the evidence is sufficient to establish a loss of earning capacity, we herewith quote a part of the most essential testimony as follows, to wit:

Dr. C. C. Shaw testifies: "He came to my office July 17, 1933, and complained of partial loss of vision in left eye and partial loss of hearing in left ear." The doctor also testifies in his opinion claimant has a permanent partial disability of 50 per cent. to left arm and leg. However, the doctor testifies there has been no change in claimant's condition since the last examination (1932). The doctor is also of the opinion that the claimant's disabilities are due to the accidental injury.

John B. Favor, called as a witness for petitioners, testified:

"Q. As such manager and light and power superintendent, have you had occasion to use a man in your employ by the name of F. E. Streit? A. Yes, sir. Q. Can you give us approximately the time he began work for you, Mr. Favor? A. Well, I couldn't say exactly. He has worked under my direction for probably—that is, at intervals for 5 or 6 years. Maybe longer than that, I don't know. Q. You were acquainted with Mr. Streit preceding September 21, 1929? A. Yes, sir. Q. And he has done work for you since that time at intervals? A. Yes, sir. Q. What other parties worked for you? A. There were several others—there was one other electrician that worked with him, and there were several that worked with him that were not electricians but were common laborers. Q. Who was the other electrician? A. M. E. Carmichael. Q. Mr. Streit and Mr. Carmichael worked together on that job? A. Yes, sir. Q. What wages were paid him on that job? A. 50c an hour. Q. What wages were paid Mr. Carmichael? A. 50c an hour. That was the schedule made up to pay for that kind of work. Q. Did Mr. Streit make any complaint to you while he was at this work, that he was unable to perform manual labor? A. No, sir. Q. Did he make any complaint to you at all, that he had any disability for doing electrical work which he did for you? A. He made no complaint at all. Q. Did he do his work as well and as rapidly as the other electrician you had? A. I couldn't see any difference. Workmen in that line are like workmen in other lines,—some are faster

than others, but he worked there like he had always done. Q. Can you see that he has suffered any disability in the actions or movements he makes around you since September 21, 1929? (Objections overruled). Q. You may answer the question. A. I didn't notice any. Q. Mr. Favor, when did you quit the employment of the city of Crescent? A. About May 3, 1933. * * * Q. Do you know whether or not Mr. Streit made application for your position or not? A. He did. Q. Did Mr. Streit ever turn down any job you offered him, Mr. Favor? A. No, sir, not to my knowledge. Q. Did he tell you during the month of January when you came to him and asked him to do some work, he was unable to do the work because of his disability? A. No. (By the Court): Q. Mr. Streit testified when he worked for the city of Crescent in March, that Mr. Carmichael was the foreman and that he received 75c per hour while he, Streit, only received 50c an hour. A. No, sir, they each received 50c. Q. Did he perform any other work for the town of Crescent in 1932? A. Oh, yes. Q. What month? A. I couldn't tell you. Q. What wages? A. At one time we paid him 87½c an hour. (By Mr. Arnold): Q. 1932? A. (by witness) I don't think so then. But we had paid them that and they were reduced to 75c and finally reduced to 50c. (By the Court): Q. But his work was satisfactory? A. Yes, sir. Q. He did not appear to be disabled or sick? A. I couldn't see it. Q. He made no complaint to you? A. No. not to me. (By the Court): I believe that's all."

Dr. C. F. Loy, called as a witness by petitioners, testified:

"Q. What is your occupation? A. Physician and surgeon, specializing in eye, ear, nose and throat. Q. Doctor, have you had occasion to examine a man by the name of F. E. Streit? A. Yes, sir. Q. On what occasion? A. Yesterday, I examined him. Q. Will you please state to the court the history he gave you with regard to an accident that happened about September 16, 1929? (Answer omitted)."

Dr. Loy testified in part with reference to his examination, as follows:

"A. * * * No evidence of sinus-itis. Ears: Both drums have normal lustre. No evidence of perforations, scars, or discharge. * * * No eye pathology found; cornea, iris, lens, retina, and optic discs appear normal. Tension normal. There is a small, incipient —(illegible) forming on the left eye, but this is not due to an injury. Vision 20/20, or normal, both eyes. Q. Doctor, did you find any difference in his ability to hear in either ear after use of the stethoscope? A. No, sir. * * * Q. Doctor, did this test show

this man has as good hearing in one ear as in the other? A. My test showed it was."

The record in this case shows that claimant performed various kinds of manual labor, during the years of 1930, 1931, 1932, and 1933, and made no complaint to any one regarding his disability. The record further shows that he engaged in various kinds of manual labor.

The claimant testifies, in part:

"Q. Mr. Streit, have you done any work since the last hearing in this case for anybody? A. Yes, sir. Q. What kind of work did you do for the town of Crescent? A. I helped build a substation or worked on the substation. Q. That is the same kind of work you were doing for the Oklahoma Gas & Electric Company when you got hurt, wasn't it? A. Yes, sir. Q. Have you worked for anybody else except the town of Crescent since then? A. No, sir. Q. Have not done any federal relief work for anybody? A. Yes, sir. Q. Where did you do that federal relief work? A. In Kingfisher county. Q. What time in the month? A. June, 1 believe it was. (By the Court): Q. What kind of work did you do over there? A. I piled brush and stood around most of the time. Q. Did you do any road work at that time? A. That was road work. Grubbed trees out of the road. One man had a shovel and one an axe. Q. And you both worked on that grubbing the trees out of the road? A. Yes, sir. Q. Did you use the axe? A. No, no, sir, I used the spade most of the time—a sharp shooter, most of the time. Q. Now, Mr. Streit, in a previous hearing you testified you took over any job that was offered to you except one? A. I think so,— that was offered to me by the town of Crescent. (By Mr. Arnold): Q. On page 34 of the transcript of record in this case, the hearing on the 12th day of October, 1932, the claimant testified to questions as follows: 'Q. Was there ever a time in question when you quit your job because you couldn't do the work? A. No.'"

On page 38 of the record claimant testifies in part as follows:

"Q. What did you tell them when you got your time check about your disability? A. I asked him why I was getting a time check and he said he was laying off all men that hadn't come up to the specifications on the work. Q. How come you to talk to Mr. Thompson? A. I wanted to know why they were letting me off. Q. Did they lay off anybody else the same time they laid you off? A. I don't know how many they laid off. I know they laid me off and some other men. Q. Did you ever make any complaint to the officials of the town of Crescent you could not do a day's work? A. I don't know whether I have made that statement, but

I asked to be excused several times when I wasn't able to work. Q. Did you tell Mr. Carmichael you weren't able to do a day's work when you made application there? A. I didn't make application."

We quote with approval the findings of fact by this court in its former opinion:

"There is no dispute in this record but that the employee has not worked as much since the injury as he did before, which he attributes to his physical condition. He says; however, that he accepted every job offered him in the period between the injury and healing. It is, however, apparent from the record that he has at numerous times since his injury worked for the employer above named and other parties, doing the same work, and it does not appear in the record anywhere that he received less wages when he was doing such work because of his physical condition than he did prior to the injury. * * * The only evidence in this record as to the difference in wage scale after the injury, as compared to that before the injury, is the testimony of the superintendent of the city light and water plant of the city of Crescent, Okla. His testimony shows that the injured employee worked for him after the injury and sometimes received the same, sometimes a greater and finally an average daily wage less than that received at the time of the injury. However, this witness stated positively that the lower wage was entirely due to economic conditions and not to the lessened ability of the claimant to work."

Section 13356, O. S. 1931, provides for compensation during the continuance of disability. In order to determine the period of disability under "other cases," it is the duty of the Commission to determine the date of the commencement of the period of permanent partial disability.

The Commission in the former and present hearing could not determine that fact, for the reason there was no evidence to justify same. This court set aside the former order and award, and remanded the case to the Commission, with directions to determine the commencement of the period of disability.

We have very carefully reviewed the entire record in the case, more especially the testimony adduced at the second hearing, and are unable to find any evidence even tending to prove a finding by the Commission of commencement of the period of permanent partial disability.

We have also reviewed the testimony regarding the findings of the Commission, "that the claimant suffered a loss of earning capacity by reason of said accident," and

hold that the evidence adduced does not reasonably support the findings of the Commission on that point.

It is therefore ordered, adjudged, and the State Industrial Commission is directed to vacate, set aside, and hold for naught its order and award of August 4, 1933, and to disallow the claim now filed.

RILEY, C. J., and ANDREWS, OSBORN, BUSBY, and WELCH, JJ., concur.